AO 91 (Rev. 11/11) Criminal Complaint   Special Agent:   Ross, ATF   Telephone: (810) 341-5710

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

| | |
|---|---|
| United States of America<br>v.<br>David Thompson, Jr. and Joshua Thomas, | Case: 4:22-mj-30421<br>Assigned To : Ivy, Curtis, Jr<br>Assign. Date : 10/3/2022<br>Description: IN RE SEALED MATTER (kcm) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 12, 2022__ in the county of __Genesee__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 924(c) | Possession of a firearm in furtherance of a drug trafficking crime |
| 21 U.S.C. 841 | Drug trafficking |
| 21 U.S.C. 846 | Conspiracy |

This criminal complaint is based on these facts:

That on or about Friday, August 12, 2022, Thompson Jr and Thomas possessed and distributed approximately 26.1 grams of methamphetamine to an ATF undercover agent while both armed with Glock semi-automatic handguns in violation of 18 U.S.C. § 924(c), 21 U.S.C. § 841, and 21 U.S.C. § 846.

☑ Continued on the attached sheet.

_____
Complainant's signature

Stephen Ross, Special Agent, ATF
Printed name and title

Sworn to before me and signed in my presence and/or by reliable electronic means.

Date: 10/3/2022

_____
Judge's signature

City and state: Flint, MI

Hon. Curtis Ivy, Jr., United States Magistrate Judge
Printed name and title

# AFFIDAVIT IN SUPPORT OF AN APPLICATION
# FOR A CRIMINAL COMPLAINT

I, Stephen Ross, a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), being duly sworn, hereby declare and state:

1.  I am a Special Agent with ATF and am currently assigned to the Detroit Field Division, Flint Field Office. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C § 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 21 U.S.C. § 801, et. seq. and 18 U. S.C. § 2516.

2.  I submit this affidavit in support of a criminal complaint and arrest warrant for David Thompson Jr and Joshua Thomas.

3.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the issuance of the requested criminal complaint and arrest warrants. Thus, this affidavit does not set forth all my knowledge of this investigation. Unless specifically indicated otherwise, all

1

conversations and statements described in this affidavit are related in substance and in part only.

4. Based on the facts set forth in this affidavit, there is probable cause to That on or about Friday, August 12, 2022, Thompson Jr and Thomas possessed and distributed approximately 26.1 grams of methamphetamine to an ATF undercover agent while both armed with Glock semi-automatic handguns in violation of 18 U.S.C. § 924(c), 21 U.S.C. § 841, and 21 U.S.C. § 846.

## PROBABLE CAUSE

5. On Friday, August 12, 2022, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent (SA) ▮▮▮▮▮▮▮ (hereinafter UCA), acting in an undercover capacity, purchased approximately 26 grams of methamphetamine from David Thompson at 4514 Warrington, Flint, Michigan 48504. Thompson acquired the narcotics from Joshua Thomas.

6. Prior to the meet, the UCA and Thompson engaged in multiple voice and text message conversations pertaining to multiple topics including the agreement to meet for the UCA purchase one ounce of methamphetamine from Thompson. The parties agreed to meet at Thompson's "pop's" residence. At approximately 1:36 pm, the UCA arrived at the deal location. The following observations/actions were made by the UCA during the transaction followed by snapshots taken from the recorded video of the transaction:

a. Once the UCA arrived at deal location the UCA made an outgoing call to Thompson who stated they were arriving shortly. After a brief wait, Thompson arrived at the deal location at approximately 1:50 pm driving a tan 4-door Dodge Ram pickup. Thompson pulled into the driveway of the location. The UCA exited his UCV and observed a male/black front seat passenger in Thompson's vehicle.

b. Thompson informed the UCA to "come inside" the residence. As the UCA approached Thompson the UCA observed a black semi-automatic pistol in Thompson's right hand. Thompson put the pistol into his right front pants pocket as he (Thompson) and the UCA walked to the front door of the residence. Thompson unlocked the front door of the residence with a key and the parties went inside the residence.



    c. The UCA began conversation about the pistol on Thompson's person to which Thompson stated that the pistol was his "bitch" and that he did not

4

want to sell it. As the parties entered the living room area of the residence Thompson retrieved the pistol, ejected the magazine and placed it on the couch and then ejected the round that was in the chamber of the pistol. Thompson then handed the pistol to the UCA to examine. Thompson identified the pistol as a "Glock twenty-two". The UCA confirmed that the firearm was a Glock 22 .40 caliber semi-automatic pistol.



d. Thompson then walked to the back of the residence. The UCA then handed the firearm to Thompson's passenger (UM#1). The UCA identified the magazine inserted into Thompson's pistol as a twenty round Glock magazine. The UCA retrieved the live round ejected from Thompson's firearm and identified the round as a .40 caliber round of ammunition. The UCA handed the round to UM#1. Thompson then walked back into the living room, retrieved his firearm and loaded the firearm with the extended magazine and one in the chamber. Thompson then sat on the couch across from the UCA. The parties discussed methamphetamine and cocaine and how Thompson distributes both.



6

e.  The UCA asked Thompson how long his source of supply was going to be. Thompson stated that he would call him. At approximately 1:54 pm, Thompson made an outgoing call with no answer. At approximately 1:55 Thompson received an incoming call from his source of supply on his and placed the call on speaker phone. The male that answered the call stated that he was on his way and that he was coming from "Clio". Thompson affirmed and ended the telephone call.

f.  The UCA and Thompson engaged in further conversation. Thompson stated that he just did "ten years" in prison. Thompson stated that he did his time for "great bodily harm less than murder". Thompson stated that he would keep his "half pound" of methamphetamine at his sister's house and go get what he needs for a deal. During the conversation Thompson placed his pistol on the floor next to the couch where he (Thompson) was sitting.



g. At approximately 2:05 pm, Thompson made another call to his source-of-supply who advised that they were arriving shortly. Thompson affirmed and ended the call. At approximately 2:09 pm, Thompson observed a light-colored SUV and stated, "there he go". The UCA observed Thompson retrieve his pistol from the floor, place it in his front right pants pocket and walk outside. UM#1 and the UCA followed. The UCA observed Thompson greet Thomas and the parties all walked back into the residence.



h. The UCA greeted Thomas who immediately asked the UCA if the UCA was "the police". The UCA negated at which time Thompson and Thomas walked to the dining room area of the residence. The UCA observed Thomas retrieved a baggie from his right front pants pocket. The UCA observed Thomas retrieve a black digital scale and place it on the dining room table. The UCA overheard Thomas provide Thompson his new telephone number. After a brief wait, Thompson and Thomas approached the UCA. Thompson handed the UCA a brown plastic baggie containing methamphetamine. The UCA approximated that the narcotics weighed approximately one ounce. The UCA observed Thomas with a clear plastic baggie of methamphetamine similar in size to the one that the UCA had just received. Thomas showed the UCA the contents of the clear plastic baggie before placing the baggie into his pants pocket. Thomas described the methamphetamine as "fire".





11

12





    i.   The parties discussed the narcotics at which time Thomas retrieved a black semi-automatic pistol from his waistband. Thomas identified the pistol as a "forty-three". The UCA observed the handgun and identified the handgun as a Glock 43 9mm semi-automatic pistol.

13



j. The parties began discussing the model, caliber and round capacity of their respective handguns, to include the handgun that the UCA had on his person. Thomas asked to trade the UCA for his handgun at which time the UCA refused. Thompson stated that he had a "forty-three" as well. Thompson offered to trade a Glock 26 for the UCA's Glock handgun. The UCA refused. The UCA then paid Thompson for the methamphetamine. Thompson stated, "give me four" ($400). The UCA counted out $400 of pre-recorded buy money. The UCA then observed

   Thompson hand Thomas a portion of the pre-recorded buy money. At approximately 2:17 pm, the UCA left the location.

 k. The UCA turned the purchase narcotics over to Det. Stambaugh of FANG. Det. Stambaugh weighed the narcotics (26.1 grams) and tested the narcotics which revealed a positive indication of the presence of methamphetamine.

7. Based on the foregoing facts and circumstances, I respectfully submit that there is probable cause to believe that on August 12, 2022, within the Eastern District of Michigan, David Thompson Jr and Joshua Thomas possessed and distributed approximately 26.1 grams of methamphetamine to an ATF undercover agent while both armed with Glock semi-automatic handguns possessed in furtherance of the drug trafficking crime all in violation of 21 U.S.C. §§ 841, 846, and 18 U.C.C. § 924(c).

Respectfully submitted,

Stephen Ross, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me and signed in my presence and/or by reliable electronic means on this 3rd day of October, 2022.

_____
Hon. Curtis Ivy Jr.
United States Magistrate Judge